1

2

3                    UNITED STATES BANKRUPTCY COURT

4                    EASTERN DISTRICT OF WASHINGTON

5    In re:                                    )
                                               )
6    LOUIS R. CHILDERS and                     )    No. 11-00015-PCW7
     GABRIELLE S. CHILDERS,                    )
7                                              )
                     Debtors.                  )
8    _____        )
                                               )
9    OWEN LAWRENCE and SUSAN                    )
     LAWRENCE; DAVID TRIPP and                 )
10   RICHELLE TRIPP; ANITA                      )
     DECAGNY; BEVERLY CARLSON;                 )
11   BECKY BRANIFF; E. BRYCE                    )
     HAUSMANN; THE ROSS FAMILY                 )
12   TRUST; DARCY C. BAKER;                     )
     RICHARD WASSON and LYNNE                  )
13   WASSON; JUDY ARBORGAST                     )
     and JAMES ARBORGAST,                      )
14                                             )
                     Plaintiffs,               )    Adv. No. 11-80059-PCW
15                                             )
     vs.                                       )
16                                             )
     LOUIS R. CHILDERS and                     )    MEMORANDUM DECISION
17   GABRIELLE S. CHILDERS,                     )
                                               )
18                   Defendants.               )
     _____        )
19

20          This is an adversary proceeding to deny the defendants' discharge brought

21   pursuant to 11 U.S.C. §§ 727(a)(4); (a)(2); (a)(3) and (a)(5) and Rule 7001 of the Federal

22   Rules of Bankruptcy Procedure.

23          This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.

24   § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is proper

25   pursuant to 28 U.S.C. § 1409(a).

26                                    **FACTS**

27          Debtors Louis and Gabrielle Childers are the defendants in this adversary

28   proceeding and are long-time operators of the Wolf Ridge Resort located near Winthrop,

MEMORANDUM DECISION - Page 1

11-80059.ap.x.2.PCW.upload.O3.14.1337114595.O2MoMJn1

Washington (hereinafter referred to as "Wolf Ridge Resort"). Mr. Childers completed high school and has physical limitations. Mrs. Childers did not complete high school. Both are in late middle age.

Defendants organized the Wolf Ridge Ranch PD in accordance with ordinances of Okanogan County Washington. The original plat for the property was filed in 1989, which was amended in 1997. Wolf Ridge Ranch PD is comprised of 17 different lots, along with approximately 40 acres of common areas appurtenant to those lots and controlled by Wolf Ridge Resort Owners Association (hereinafter referred to as the "HOA"). The property is located in a scenic recreational area. There is also a "limited common area" that the defendants were to maintain, which included amenities such as a pool and a hot tub.

Defendants owned most of the property within the Wolf Ridge Ranch PD and caused the construction of certain structures on the property to develop Wolf Ridge Resort, which included residential duplex log structures, stand alone cabins, and recreation facilities. Beginning about 1997, the business plan was that the defendants would sell the lots with the cabins or other residential structures to individuals who wished to rent the structures to third parties as well as occasionally occupy the cabins themselves. Each structure was furnished with handcrafted log furniture. Defendants continued ownership of certain lots and structures.

Contractual terms between the defendants and the owners of the lots vary, but the owners were required to rent exclusively through the defendants who received between 40 and 45 percent of the rental income. The HOA contracted with the defendants to perform certain services on the common area such as snow plowing and mowing. In addition to the income from the rental management and various services to the HOA, the defendants also generated income from performing repair and other work on the structures and building custom furniture for the structures.

Pre-petition certain owners sued the defendants in state court as the defendants had not paid the owners their applicable share of the rental income. The owners of the

MEMORANDUM DECISION - Page 2

lots sought to change the contractual terms which required all rental management to occur through the defendants. The day before the hearing in state court, the chapter 7 was filed. The trustee agreed to change the contractual terms, and the defendants no longer manage rental of the properties in the resort.

Plaintiffs in this adversary proceeding who seek to determine whether the defendants are entitled to a discharge are owners of Lots 7B (Lawrence), 8B (Tripp), 6A (Decagny/Carlson), 5B (Braniff), 11A (Arborgast), 6B (Wasson), 10 (Baker/Hausmann/ Ross) of Wolf Ridge Ranch PD. Not all owners of lots joined in the adversary as plaintiffs.

Although the factual allegations and findings may support more than one of the legal theories argued, the facts will be discussed in relationship to a specific legal theory.

## LEGAL STANDARD

To effectuate policies underlying the Code, objections to discharge are construed strictly against plaintiff creditors and liberally in favor of debtors. In re Lane, 302 B.R. 75 (Bankr. D. Idaho 2003).

Both §§ 727(a)(2) and (a)(4) require that actions or omissions on the part of the debtor be made with actual intent. The analysis of what constitutes intent to defraud with respect to § 727(a)(2) is also applicable under § 727(a)(4). In re Wills, 243 B.R. 58 (B.A.P. 9th Cir. 1999); In re Roberts, 331 B.R. 876 (B.A.P. 9th Cir. 2005), aff'd 241 Fed. Appx. 420 (9th Cir. 2007); In re Khalil, 379 B.R. 163 (B.A.P. 9th Cir. 2007); In re Cox, 41 F.3d 1294 (9th Cir. 1994).

## CLAIMS FOR RELIEF

**1.    First Claim for Relief - 11 U.S.C. § 727(a)(2)**

Should the defendants be denied their discharge because the defendants, with intent to hinder, delay or defraud a creditor or the trustee, concealed property of the estate before and/or after filing the personal case?

11 U.S.C. § 727(a)(2) provides for the denial of a debtor's discharge where the debtor, with intent to hinder, delay or defraud, transfers, conceals, or destroys property

MEMORANDUM DECISION - Page 3

of either the debtor, or the estate. Section 727(a)(2) requires actual intent to hinder, delay or defraud, which can be determined by an examination of all the facts, circumstances, and inferences therefrom. "Constructive fraudulent intent cannot be the basis for denial of discharge." In re Devers, 759 F.2d 751, 753 (9th Cir. 1985). A discharge cannot be denied when items are omitted from the schedules by honest mistake. In re Khalil, supra, at 175, quoting In re Lee, 309 B.R. 468, 477 (Bankr. W.D. Tex. 2004). In reaching a conclusion whether intent existed, courts commonly look for certain badges of fraud.

> These factors, not all of which need be present, include 1) a close relationship between the transferor and the transferee; 2) that the transfer was in anticipation of a pending suit; 3) that the transferor Debtor was insolvent or in poor financial condition at the time; 4) that all or substantially all of the Debtor's property was transferred; 5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and 6) that the Debtor received inadequate consideration for the transfer. (Citations omitted.)

In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992). See also In re Beauchamp, 236 B.R. 727 (B.A.P. 9th Cir. 1999).[1]

Debtors' chapter 7 schedules state they have no insurance policies, office furniture, machinery, equipment or supplies for the business and no inventory. After the plaintiffs raised the issue in discovery, the schedules were amended to refer to a snow plow and irrigation equipment. The explanation for the failure to list the life insurance policies which were in place at the time of the bankruptcy filing was that they had no cash value. The snow plow was an attachment to a vehicle which was listed in the schedules. The explanation for the failure to initially list the irrigation equipment was that the bankruptcy filing was done on an emergency basis and, as the irrigation

---

[1]Plaintiffs, by an Amended Motion in Limine, sought to preclude the defendants from calling Chapter 7 Trustee, Jeffrey Earl, as a witness and from having Mr. Earl offer as exhibits or testify about documents plaintiffs requested in discovery. A ruling partially addressing the request was made orally with other issues reserved for trial. The unresolved issues raised in the motion are deemed withdrawn as defendants did not call Mr. Earl as a witness during the trial.

MEMORANDUM DECISION - Page 4

equipment was then snow covered, the defendants simply forgot about it. The explanation for the failure to list any supplies, inventory or office furniture was that such assets were minimal. Further, no equipment was listed on the original schedules as most of the equipment did not belong to the defendants, but to their son. In response to the requirement to list "property held for another" in the Statement of Financial Affairs, the answer was that for the benefit of their son, the defendants held "miscellaneous tools."

The defendants testified that no later than 2008 the defendants authorized their son to continue the custom log furniture building aspect of the business and gave to him all the tools and machinery for doing so. They also authorized him to continue the log structure repair portion of the business and gave to him all of the tools and equipment for doing so. The tools, machinery and equipment continued to be located upon and used at the shop located on the residential lot of the defendants located in the resort.

Defendants' son, Jared Childers, incorporated J.A. Childers Company LLC on May 27, 2010, which corporation expired in 2011. He testified that it was through that company that he performed this work as well as unrelated work for another family member. That company is not his primary source of income.

The defendants, for many years, maintained a bank account at Farmers Bank in the name of Wolf Ridge Resort and it was into this account that the rental deposits were placed. They also maintained an account at Farmers Bank in the name of Childers Ranch and an account at North Cascade Bank in the name of Wolf Ridge Resort. In June of 2009, an invoice for repair work on the structure owned by plaintiff Tripp was issued by Childers Ranch and the payment for the work was deposited into that account. In July of 2009, plaintiff Lawrence negotiated and agreed with the defendants to build an item of custom log furniture for the structure owned by the plaintiffs. The invoice was in the name of Childers Ranch and the payment was deposited into that account. In September 2010, plaintiff Lawrence negotiated and agreed with the defendants regarding some repair work on his structure. The invoice was in the name of Childers Ranch and the payment was deposited into that account.

MEMORANDUM DECISION - Page 5

The state sales tax return for Childers Ranch for December 2010, the month prior to the bankruptcy filing, reflects income from "furniture" as does the returns for June, September and October of 2010. Jared Childers testified that he received all the income from the furniture building aspect of the business, but it was "practical" to pass the funds through his parents' account. He stated that he may have returned some of the funds to his parents due to their financial problems.

One of the log structures owned by the defendants was the subject of a foreclosure and post-petition the creditor required all the custom log furniture and other personal property be removed from the log cabin. The furniture is in possession of Jared Childers who testified that was done as he had personally built the furniture. He testified that the log cabin was not only a rental unit, but served as a showroom for the custom furniture. There was no signage stating the furniture was for sale, and he did not recall ever selling any item of furniture other than to his parents or the owners of the lots in the resort.

The evidence indicates that historically the defendants were actively involved in the furniture building and log structure repair aspects of this business even though the son did much of the physical work. The defendants stated it was always their intention to transfer this portion of the business to their son as he had for some time performed the actual work. If, in fact, the defendants had transferred all the equipment and machinery to the son for this work, the reference in the schedules to "miscellaneous tools" did not reveal that fact.

The family lives in close proximity and historically the members have worked together to develop and sustain the Wolf Ridge business. The conclusion is that the parents are still involved in the furniture building and repair aspect of the business and that the parents have not completed the transfer of necessary business functions to the son. However, both the defendants and the son provided credible evidence that there was no intent to deceive creditors by this situation. They intended that the furniture building and repair portion of the business, including the ownership and control of the machinery and equipment, was to be conducted by the son and believed that portion of

MEMORANDUM DECISION - Page 6

the business had been transferred. Even though that is not true in actuality, considering the totality of the facts, the failure to reveal the transfer was not the result of an intent to deceive or conceal assets. Thus, the facts concerning the furniture building and log cabin repair portion of the defendants' business do not result in a denial of discharge under § 727(a)(2).

**2.     Second Claim for Relief - 11 U.S.C. § 727(a)(4)**

Should the defendants be denied their discharge because the defendants knowingly failed to disclose in the schedules their legal or equitable interest in assets and/or listed assets at zero value when the assets had value?

Plaintiffs allege that the defendants testified at their 341 meeting that the schedules were true and correct and included all of their assets, and that the values were correct, when they knew that was not true. Plaintiffs allege that those false oaths relate to material facts and were made with fraudulent intent and were made in or in connection with the case.

11 U.S.C. § 727(a)(4)(A) denies a discharge to a debtor who "knowingly and fraudulently" made a false oath or account in the course of the bankruptcy proceedings. In order to bring a successful § 727(a)(4)(A) claim for false oath, the plaintiff must show: (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. In re Wills, supra. It is important to note that the Code provision requires the false statement in question be made both "knowingly and fraudulently."

The facts supporting this claim primarily concern Mrs. Childers' interest in her mother's probate estate. Mrs. Childers, who is one of four equal beneficiaries, was appointed as personal representative of the estate in February 2010. She signed and filed an inventory of the probate estate on February 23, 2010. That inventory reported that the only asset was a house which, after deducting a lien of $18,000, had a net value of $82,000. When the bankruptcy schedules were filed on January 3, 2011, the interest in the mother's estate was listed and valued at zero. Mrs. Childers, in her deposition, described

MEMORANDUM DECISION - Page 7

this lien as that of a governmental unit arising from end-of-life care for the mother.

Also in her deposition and initially at trial, Mrs. Childers testified that her mother had been a painter and there were some of her paintings in the probate estate, but they had minimal value other than sentimental value. In the deposition, she also testified that she had been personally paying expenses of the probate estate and had obtained a loan from Farmers Bank to do so. No such loan was reflected on the bankruptcy schedules.

Shortly before trial, the defendants produced a copy of a Deed of Trust to Farmers Bank on the mother's house. The Deed of Trust was signed by Mrs. Childers and dated February 23, 2011, and was to secure a note in the amount of $15,809 payable by the probate estate. Mrs. Childers testified that she did not initially remember this loan and never received a copy of the note. Later she thought it was her personal obligation. The loan proceeds were deposited into one of the defendants' accounts. Since the due date of December 31, 2011, the defendants have been making payments on the note.

One of the other beneficiaries paid certain expenses of the probate estate. Post-petition, the defendants informed that beneficiary that the probate estate contains a painting by an artist named Phillips, which may have a value of $12,000 to $18,000. The probate estate contains some paintings by an artist named Bonnard, which must be appraised by the Frye Art Museum, which has a collection of paintings by that artist. The daughter of the defendants has been living in the house, which is apparently the major asset of the probate estate without paying rent. Mrs. Childers testified that the daughter has a claim against the probate estate for expenses the daughter incurred for repairs to the house. The probate inventory has not been amended and there has been a request by one of the other beneficiaries that Mrs. Childers be removed as personal representative of the probate estate.

Upon cross examination, Mrs. Childers admitted the existence of these paintings. Although not specifically providing an explanation of the inconsistent prior testimony, she indicated she was confused and had forgotten the loan transaction and other financial affairs related to the probate and the personal financial situation due to the "chaos" in

MEMORANDUM DECISION - Page 8

her life.  That chaos was caused by her mother's 2009 death and primarily by the disagreements between the defendants and the owners of the lots in Wolf Ridge Resort, specifically the attempt in state court to remove the defendants from the management of rentals.  Her tone of voice and demeanor indicated that she blames the plaintiffs for the financial distress experienced by the defendants.

The defendants listed the value of the interest in the probate estate on the schedules at zero when the most simple math would indicate that the debtor had an interest with a value of roughly $20,000.  Mrs. Childers now admits that personal property in the probate estate likely has significant value.   The defendants misrepresented the value of this equitable interest in the original schedules and by the failure to amend that portion of the schedules continued to do so.  The facts mandate the conclusion that the failure to place a value on this interest in the probate estate constituted not only a false oath but one made knowingly and fraudulently.

### 3.    Third Claim For Relief - 11 U.S.C. § 727(a)(3)

Should the defendants discharge be denied as the defendants failed to keep or preserve, and destroyed, recorded information from which the defendants' financial condition or business transactions might be ascertained?

Section 727(a)(3) provides that a debtor may receive a discharge unless

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

In order to sustain a claim under § 727(a)(3), plaintiffs must show by a preponderance of the evidence (1) that the debtor failed to maintain and preserve adequate records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions. In re Caneva, 550 F.3d 755, 762 (9th Cir. 2008), quoting Cox, 41 F.3d at 1296.  Once the creditor has satisfied the initial burden of going forward, the burden of production shifts to the debtor to satisfactorily explain losses or deficiencies.  In re Vitek, 271 B.R. 551, 558 (Bankr. S.D. Ohio 2001), aff'd 93 Fed.

MEMORANDUM DECISION - Page 9

Appx. 28 (6th Cir. 2004). Intent to conceal one's financial condition is not an element under § 723(a)(7). <u>Cox</u>, 41 F.3d at 1297.

The financial and business records of the defendants were maintained on a QuickBooks computer program. In that program, the defendants maintained check registers, including information as to the source of deposits into the three checking accounts. Also in that program were records regarding employees, such as payroll tax information, wage information, etc. Also in the program were records relating to the rental reservations and income from each of the lots as well as business tax records and records of expenses. A retired accountant acted as a part-time bookkeeper for the business. He would visit monthly and, from the data in QuickBooks, would prepare tax returns and checks for the lot owners representing their share of rental income. He dated each check for the last day of the month in which they were prepared. The defendants mailed the checks on an erratic basis. Although the rental management agreements required rental income to be paid on the 20th day of the month following the rental, that was rarely done. Historically, the defendants sent the checks after that date on no regular schedule and periodically checks were dishonored.

On June 22, 2011, a discovery request was sent to the defendants' counsel, which requested monthly bank statements, check registers, federal and state tax returns, credit card statements, records for rental income for each lot, and other financial documents. It did not request a list of past renters of each lot. During Mrs. Childers' testimony the first day of trial, it was apparent from her demeanor that she resented the discovery request and was reluctant to comply with the request.[2]

On July 6, 2011, the Chapter 7 trustee sold various assets of the estate, such as irrigation equipment, the web site and trade name Wolf Ridge. The trustee also sold "business records showing contact information for past customers and dates of stay," i.e.,

---

[2] She stated she had "piles and piles of stuff" and implied that she was simply too busy to review it. The response to the discovery request signed August 17, 2011, states no documents are available.

MEMORANDUM DECISION - Page 10

the customer list.  The HOA purchased the irrigation equipment, but another person purchased the other assets, including the customer list.  The defendants testified that upon the sale by the trustee, the QuickBooks program and all information in it was downloaded onto a thumb drive and deleted from the computer.  The purchaser of the customer list was given the thumb drive and the defendants retained neither computer copies nor paper copies of the information in the program.  The reason given for deleting all computer financial records was that those records had been sold by the trustee.

Mrs. Childers' testimony regarding the financial records was inconsistent.  She stated there were no hard copies retained.  However, eventually there were incomplete paper copies of certain records produced.  She testified that there were records of expenses, but that often when such documentation was received by the defendants, it was "just tossed aside."  Later she stated there were records of expenses as well as other financial records, but she "could not put my hands on them" in part as the discovery request was made during a busy time of year.  When questioned by her own counsel, contrary to prior testimony, Mrs. Childers stated that when the discovery request had been received she "desperately" searched her "warehouse full of papers" and provided all that she had.

Some records were produced.  For the account at North Cascades Bank, monthly statements were provided for two of the months between January and July, 2011, and for 2010 there were five monthly statements produced.  For the Farmers Bank account in the name of Wolf Ridge, there were five monthly statements produced for the period from January to July of 2011, and for 2010 there were six months produced.  For the Farmers Bank account in the name of Childers Ranch, only one monthly statement was produced for the period from January 2008 through July 2011.  Routinely, tens of thousands of dollars were transferred from the Farmers Bank Wolf Ridge account to the other accounts.  When asked about the large cash withdrawals and transfers among the accounts or the source of the deposits into the accounts, the defendants responded that they did not recall, but the information would be in the QuickBooks records.

MEMORANDUM DECISION - Page 11

The attitude of the defendants was that if the plaintiffs wanted financial information, the plaintiffs should have obtained that information from other sources such as the credit card companies or the banks or the purchaser of the customer list who had been given the financial information. The defendants misapprehend the duties of the respective parties to this dispute. This is not a discovery dispute. The issue is whether the defendants fulfilled their duty to preserve their financial records. Clearly, they did not and this alone results in a denial of discharge.

**4.     Fourth Claim For Relief - 11 U.S.C. § 727(a)(5)**

11 U.S.C. § 727(a)(5) states that the court shall grant the debtor a discharge unless the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities.

Failure to obtain a discharge under this subsection of the statute does not require bad faith or an intent to deceive on the part of the debtor.

The party objecting to discharge must initially produce evidence of the loss of assets. Specifically, the evidence must convince the court that the debtor owned or controlled assets shortly before the commencement of the bankruptcy case, but those assets were not longer in the possession or ownership of the debtor after the commencement of the case. In re Retz, 606 F.3d 1189 (9th Cir. 2010). The burden of producing evidence then shifts to the debtor to satisfactorily explain the loss. To be satisfactory, the explanation must be more than a vague or indefinite statement. Courts consider the nature of the asset, the nature of the business in which the debtor was engaged, the financial sophistication of the debtor and the magnitude of the loss.

In this adversary proceeding, some monthly financial records were provided as evidence. The most active months for the rental business was December and January and during the summer months. Certain plaintiffs testified that during the last half of 2010, they had not received their share of rental proceeds for several months and repeatedly attempted to contact the defendants seeking distribution of the rental proceeds to the lot owners. This testimony was very credible. The monthly bank statements of

MEMORANDUM DECISION - Page 12

the defendants demonstrated that some lot owners received some distributions of rent in late 2010, but others did not. It is impossible to determine the relationship of distributions by the defendants to the receipt of rental income by the defendants nor how the distributions were calculated or upon what basis some lot owners received distributions and some did not. However, interpreting the evidence most favorably to the defendants, at best, some lot owners were receiving erratic partial distributions.

The bank records revealed that between July and December of 2010, approximately $70,000 was transferred from the Farmers Bank Wolf Ridge account into which rental deposits were made by renters. The funds were transferred to the Farmers Bank Childers Ranch account. No monthly bank statements from that account for that period were provided. Defendants did not explain the ultimate use of those funds. During this period, defendants were not paying mortgage payments on the lots they owned and were not distributing rental proceeds, except on a very limited basis. The monthly state sales tax returns for 2010 report taxable retail income of $321,678.67. Only three of seven months of state sales tax returns were available for 2011, but those three months reported taxable rental income of $57,255.18.

At trial, the defendants only explanation of their inability to use these assets to meet liabilities was a general statement that there were business expenses such as mortgage payments and employee wages and supplies and that the defendants had significant legal expenses. Vague indefinite statements are not sufficient to satisfactorily explain the loss of the cash received. The defendants failed to meet their burden of producing evidence to demonstrate the loss or use of the reported income or explain why the reported income was insufficient to meet their liabilities. The loss of the rental income received during the last half of 2010 has not been satisfactorily explained.

**CONCLUSION**

As to 11 U.S.C. § 727(a)(2), the facts presented at trial concerning the furniture building and log cabin repair portion of the defendants' business do not demonstrate an intent to hinder, delay or defraud creditors and therefore will not result in a denial of

MEMORANDUM DECISION - Page 13

discharge.  As to 11 U.S.C. § 727(a)(4), the defendants' misrepresentation of values on their original schedules and their continuing failure to amend those schedules constitutes knowing and fraudulent false oath and defendants are denied a discharge on that basis. As to 11 U.S.C. § 727(a)(3), the evidence at trial established that defendants failed to fulfill their duty to preserve records and, this fact alone, results in a denial of defendants' discharge.  As to 11 U.S.C. § 727(a)(5), the defendants failed to meet their burden to produce evidence to demonstrate the loss of their reported income or to explain why it was insufficient to meet their liabilities.   Therefore, the defendants are denied a discharge in this case.

_Patricia C. Williams_
**Patricia C. Williams**
**Bankruptcy Judge**

05/15/2012 14:06:37

MEMORANDUM DECISION - Page 14